IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| KIMBERLY T.,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Civil No. 20-7253 (RMB)<br><br>OPINION |

**APPEARANCES**

Adrienne Freya Jarvis
800 North Kings Highway, Suite 304
Cherry Hill, New Jersey 08034

   *On behalf of Plaintiff*

Elizabeth S. Matoni
Lauren Donner Chait
Social Security Administration
300 Spring Garden Street, Sixth Floor
Philadelphia, Pennsylvania 19123

   *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

      This matter comes before the Court upon an appeal filed by Plaintiff Kimberly

T., seeking judicial review of the final determination of the Commissioner of the

Social Security Administration (the "Commissioner" and the "SSA," respectively),

which denied Plaintiff's applications for Social Security Disability benefits. For the reasons set forth herein, the Court will vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion.

I.   PROCEDURAL HISTORY

On April 29, 2013, Plaintiff protectively filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning December 26, 2012. [R. at 346.] The claims were first denied on October 29, 2013, and again denied upon reconsideration on March 21, 2014. [R. at 230–32, 236–38.] On April 19, 2014, Plaintiff filed a written request for a hearing before an ALJ. [R. at 239–40.] That hearing took place on July 19, 2016. [R. at 92–94.] Plaintiff was represented by an attorney at that hearing, at which the ALJ heard testimony from Plaintiff and her mother. [R. at 92–94, 143–49.] On September 20, 2016, vocational expert William T. Slaven, III responded to the ALJ's written interrogatories. [R. at 483–85.]

On January 9, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. [R. at 187–215.] However, Plaintiff requested Appeals Council review of that decision and, on November 21, 2017, the Appeals Council granted that request and remanded her claim for a new hearing. [*See* R. at 225–28.] On July 21, 2018, Plaintiff, again represented by an attorney, testified at a second administrative hearing before the ALJ. [R. at 49–51.] Slaven testified as the vocational expert, as well. [*Id.*] Once again, on November 29, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. [R. at 13–30.] On May 1, 2020, the Appeals Council

2

denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Hess*, 931 F.3d at 208 n.10 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, whereas the Commissioner bears the burden of proof at step five. Hess, 931 F.3d at 201. Recently, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of the analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R.

4

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on April 30, 1989, was 23 years old on the alleged onset date and 29 years old at the time of her administrative hearing on July 21, 2018. [*See* R. at 13, 49–51, 346.] Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017, meaning that she must establish disability on or before that date to be entitled to benefits. [*See* R. at 13.]

### A. Plaintiff's Educational and Work History

Plaintiff attended two years of college, ending in 2011. [R. at 418.] She also attended Harris Business School for a ten-month medical-assistant program in 2016—after the alleged onset date of December 26, 2012. [R. at 61, 66, 107, 130, 133–34, 418.] At her initial hearing before the ALJ, she testified that she had seizures requiring medical treatment while studying at Harris. [R. at 134–35.] She served as an intern at Lourdes Urgent Care from September to December 2016, although she "was absent due to illness during the internship." [Docket No. 12, at 6 (citing R. at 61–62, 533–34.] Prior to the alleged onset date, Plaintiff worked as a cashier, a party coordinator, and an assistant/typist. [R. at 418, 443–48.] The ALJ found that she had past relevant work as a semi-skilled cashier-checker. [R. at 28.]

The ALJ determined that Plaintiff did not engage in substantial gainful activity between the alleged onset date and the date that she was last insured—that is, December 26, 2012, through July 30, 2017. [R. at 13.] Plaintiff earned $364.20 in 2013, $1,312.75 from CVS Pharmacy in 2014, and $2,481.82 from CVS in 2015. [R. at 353–54, 357.] Plaintiff testified that she was terminated from her job at CVS because she had seizures at work. [R. at 113.] However, she returned to work as a pharmacy technician at CVS in January 2017. [R. at 60–61, 66.] She was only given part-time hours because of issues with tardiness and absences. [R. at 67.] She had this part-time job at the time of her 2018 hearing before the ALJ. [R. at 60.]

6

### B. Plaintiff's Medical History

Plaintiff suffers from the following physical impairments: pseudoseizures, [R. at 825, 862, 925, 943, 1448]; endometriosis [R. at 862, 1899, 1921, 2288]; rheumatoid arthritis, [R. at 2233]; fibromyalgia, [R. at 627, 862, 1966, 2233]; interstitial cystitis, [R. at 1271]; abnormalities of the cervical spine, [R. at 679]; vertigo [R. at 634, 666, 669, 679]; migraine headaches, [R. at 663]; and lupus, [R. at 2018].

### C. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in gainful activity during the relevant period of December 26, 2012, through June 30, 2017. [R. at 13.]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "affective disorder; anxiety disorder; somatoform disorder; fibromyalgia; rheumatoid arthritis; lupus; endometriosis; recurrent ovarian cysts; cervical degenerative disc disease; and pseudoseizures." [*Id.*] The ALJ also noted "evidence in the record of a vertiginous syndrome/vertigo," asthma, hypothyroidism, and vitamin D deficiency. [R. at 13–14.] However, the ALJ concluded that those impairments resulted only in "minimal work-related limitations" and were non-severe. [*Id.*]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 14–16.]

At step four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except with no exposure to unprotected heights or hazardous machinery. She is able to understand, remember and carry out simple, routine and repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple work-related decisions; with few, if any, workplace changes.

[R. at 16–17.] The ALJ also found that Plaintiff "was unable to perform any past relevant work" due to her RFC. [R. at 28.]

At step five, the ALJ found that, during the relevant period "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." [R. at 29.] Therefore, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 26, 2012, the alleged onset date, through June 30, 2017, the date last insured." [R. at 30.]

## IV.  DISCUSSION

Plaintiff raises four arguments in support of remanding this case. First, she argues that the ALJ erroneously accorded "significant weight" to the opinions of examining physician Dr. Wahl, resulting in an inaccurate RFC determination. [Docket No. 12, at 9–14.] Second, she argues that "substantial evidence does not support the ALJ's finding that [Plaintiff's] pseudoseizures required only seizure precautions." [*Id.* at 14–18 (alterations omitted).] Third, she argues that "the ALJ unreasonably relied on [Plaintiff's] activities as probative evidence of her ability to

8

perform sustained work." [*Id.* at 18–20 (alterations omitted).] Fourth and finally, Plaintiff argues that "the ALJ failed to obtain required vocational-expert testimony or similar evidence" to support her "second and third Step-5 decisions." [*Id.* at 20–23 (alterations omitted).] The Court will address each argument in turn.

### A.     Dr. Wahl's Opinions

While Plaintiff acknowledges that, in some ways, "the ALJ found that [Plaintiff] was more limited . . . than Dr. Wahl opined," she ultimately argues that "[t]he ALJ unreasonably accorded 'significant weight' to Dr. Wahl's July 2013 opinions." [*Id.* at 12.] Dr. Wahl opined that Plaintiff had only two physical impairments: episodic vertigo and pseudoseizures. [R. at 634.] The ALJ, despite finding that Plaintiff's episodic vertigo was not a severe impairment, found that her pseudoseizures constituted one of seven severe physical impairments. [R. at 13.]

"Because the ALJ herself recognized that [Plaintiff] had six more 'severe' impairments than Dr. Wahl acknowledged as impairments at all," Plaintiff's argument goes, "the ALJ unreasonably accorded 'significant weight' to Dr. Wahl's July 2013 opinions for the entire period the ALJ adjudicated." [Docket No. 12, at 13.] Plaintiff contends that Dr. Wahl's conclusions about what work Plaintiff was capable of performing should not have been accorded significant weight "[b]ecause Dr. Wahl knew about only a fraction of [Plaintiff's] 'severe' physical impairments *as determined by the ALJ herself*." [*Id.* (emphasis in original).]

Defendant responds to this argument by generally asserting that substantial evidence—including and in addition to Dr. Wahl's opinions—supported the ALJ's

9

RFC determination. [*See* Docket No. 14, at 8–10.] As a general matter, the Court agrees with Defendant. Plaintiff's argument seems to be that because the ALJ accorded Dr. Wahl's opinions significant weight, that means that the ALJ simply *adopted* Dr. Wahl's opinions in formulating the RFC. However, this is not supported by the record. Rather, the ALJ carefully considered a wide swath of evidence, including Dr. Wahl's and others' opinions, upon which she formulated what she believed to be an appropriate RFC. [*See* R. at 16–28.] While the ALJ's determination shared many details with Dr. Wahl's opinions, they were not identical. In fact, the RFC was *more* limited than what Dr. Wahl concluded. [*See id.* at 12 ("[Plaintiff] acknowledges that the ALJ found that she was more limited, in part, than Dr. Wahl opined.").] Moreover, the ALJ's RFC determination explicitly provided accommodations for the severe physical limitations that Dr. Wahl did not address: "The claimant's endometriosis, fibromyalgia, [rheumatoid arthritis], lupus, recurrent ovarian cysts and cervical disc disease have been accommodated in limiting the claimant to light exertional level work with the additional environmental and non-exertional limitations adopted herein." [R. at 28.] Therefore, the Court rejects Plaintiff's argument that the ALJ erroneously accorded significant weight to Dr. Wahl's opinions. The Court will not remand on that basis.

    B.    **Pseudoseizure Limitations**

Next, Plaintiff argues that the ALJ's RFC determination was inadequate with respect to Plaintiff's severe impairment caused by pseudoseizures. [Docket No. 12, at 14–18.] The RFC accommodated for this impairment via "environmental

limitations": Plaintiff could "perform light work . . . except with no exposure to unprotected heights or hazardous machinery." [R. at 16, 28.] Plaintiff now argues that this accommodation "failed to account for off-task time" and "alone could not logically account for [Plaintiff's] workplace pseudoseizures." [Docket No. 12, at 15.] The ALJ did take into consideration Plaintiff's off-task time, but ultimately concluded that it was "minimal" and did not warrant consideration as "a factor that needs to be accommodated." [R. at 10.] Specifically, the ALJ reasoned:

> [T]he claimant reported these [pseudoseizure] episodes were characterized as "staring out" episodes lasting 20 seconds and occurring 20 times a day; multiplying 20 seconds by 20 times equals 400 seconds per day, approximately 6-7 minutes in an 8-hour workday. Such a minimal amount of time over the course of an 8-hour day (without postictal periods) would not be considered a factor that needs to be accommodated in finding the claimant would have been off-task during these episodes.

[*Id.*]

Plaintiff takes issue with this conclusion, and for good reason. The ALJ's above analysis essentially did the work typically reserved for a vocational expert. If, in fact, a vocational expert had testified to the same conclusion, Plaintiff would have been able to cross-examine them. *See Wallace v. Bowen*, 869 F.2d 187, 191–92 (3d Cir. 1988); 5 U.S.C. § 556(d) ("A party is entitled . . . to conduct such cross-examination as may be required for a full and true disclosure of the facts.") Here, Plaintiff did not have the opportunity to cross-examine the ALJ-*cum*-vocational expert. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988) ("These speculations are based upon information outside the record. By so relying, the ALJ has effectively deprived [the

11

plaintiff] of an opportunity to cross-examine a witness or rebut testimony."). Moreover, it is unclear if the ALJ's dismissal of Plaintiff's possible need for off-task time accommodations might have affected the vocational expert's conclusions about what jobs Plaintiff could successfully hold. The vocational expert identified three possible jobs: cleaner/housekeeper, DOT #323.687-014; produce weigher, DOT #299.587-010; and bottle line attendant, DOT #920.687-042. [R. at 29.] The first two jobs that the vocational expert identified involve interaction with the public. *See DOT*, No. 323.687-014 (identifying rendering assistance to patrons as a responsibility for a cleaner/housekeeper); *DOT*, No. 299.587-010 (identifying weighing produce for customers as a responsibility for a produce weigher). In sum, the Court agrees with Plaintiff that the ALJ erroneously decided against considering the time off-task limitation of Plaintiff's pseudoseizure condition. Therefore, the Court will remand this matter for consideration of that issue, which should be presented to the vocational expert. The ALJ may ultimately reach the same conclusion, but the issue should be presented to the vocational expert.

**C.     Consideration of Plaintiff's Daily Activities**

Next, Plaintiff argues that the ALJ erroneously relied on evidence of Plaintiff's everyday activities in determining her RFC. [*See* Docket No. 12, at 18–20.] Plaintiff appears to contend that, because the activities that the ALJ considered did not "approach the level of sustained work," they could not possibly support the ALJ's RFC determination. [*See* Docket No. 15, at 5.] However, as with Plaintiff's first argument, the Court notes here that the ALJ by no means relied *exclusively* on

12

Plaintiff's everyday activities in determining her RFC. [*See* R. at 16–28.] Instead, the ALJ considered that evidence in combination with a substantial amount of other evidence. [*See id.*] Moreover, the ALJ did not err in doing so. *See* 20 C.F.R. § 404.1529(c)(3)(i) (specifically calling for the consideration of the claimant's "daily activities" in determining the RFC). Therefore, the Court will not remand on this basis.

### D. Alternative Step 5 Decisions

Finally, Plaintiff argues that "the ALJ failed to obtain required vocational-expert testimony or similar evidence" in support of her second and third alternative Step 5 decisions. [Docket No. 12, at 20–23.] In other words, Plaintiff argues that the ALJ's alternative decisions—for which the ALJ explicitly did not rely on vocational expert evidence, [R. at 29–30]—were erroneous, [*see* Docket No. 12, at 20–23]. The Third Circuit has held, and Defendant concedes, that an ALJ may not rely on the Grid Rules in determining the RFC of a claimant who has both exertional and non-exertional limitations, unless the ALJ considers "vocational expert [testimony] or other similar evidence, such as a learned treatise" or provides the claimant with a pre-decision notice of intent to rely on official notice rather than additional evidence. *See Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). [*See* Docket No. 14, at 14 n.2 ("Plaintiff is correct that the grids do not apply in cases where the claimant has both exertional and nonexertional limitations.").] Here, for her second and third alternative Step 5 decisions, the ALJ explicitly excluded the vocational expert testimony from her consideration, did not consider "similar evidence" in its

13

stead, did not provide Plaintiff a pre-decision notice of intent, and relied on the Grid Rules. [*See* R. at 29–30.] This was improper per *Sykes*. Therefore, the Court will remand on that basis as well.

## V.     CONCLUSION

For the reasons expressed above, this Court will vacate the ALJ's decision and remand the matter for further proceedings consistent with this Opinion. An accompanying Order shall issue.

<u>October 18, 2021</u>                                         <u>s/Renée Marie Bumb</u>
Date                                                                          RENÉE MARIE BUMB
                                                                                    United States District Judge